STATE OF TENNESSEE FOR USE OF COCKE COUNTY *v.* W. L. HENDERSON *et al.*

(*Knoxville.* September Term, 1929.)

Opinion filed December 9, 1929.

AILOR, CARTY & CRAWFORD, for complainant, appellant.

JOHN M. SIMERLY, GEO. W. GORRELL and GREER & GREER, for defendant, appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

Referring only to such facts appearing in the record as are necessary to bring out the question before us for decision, it may be stated that on August 29, 1924, the State of Tennessee, suing for the use of Cocke County, obtained a decree in the Chancery Court of that county against C. D. Balch for $1778.37. Balch was a former Trustee of said county and the decree just mentioned was for that portion of his liability on account of a shortage in office for which his sureties were not responsible.

A memorandum or abstract of this decree was recorded in the Register's Office of Cocke County September 29, 1924.

On September 30, 1924, Balch conveyed a valuable farm in Cocke County subject to 'a mortgage in favor of the Fidelity Trust Company of Knoxville for something over $5000 to defendant W. L. Henderson. The consideration for said conveyance was the assumption by Henderson of the mortgage to the Fidelity Trust Company and the payment to Balch of $16,473.77 in cash.

Execution was issued against Balch upon the decree first above mentioned and returned *nulla bona*. Sometime thereafter, on November 29, 1924, the bill herein

was filed by the State for the use of Cocke County to reach the equity in the aforesaid tract of land formerly owned by Balch and sold as just stated to Henderson and to subject this equity to the satisfaction of said decree. Proper parties were made defendants to this bill and there seems to have been no serious resistance to the relief sought, by any of such defendants.

After the conveyance of Balch to Henderson, and on December 18, 1924, Balch filed a petition in bankruptcy and was adjudicated a bankrupt on December 22, 1924.

Sometime thereafter Balch's Trustee in Bankruptcy filed an intervening petition in the case in which he set out that the lien created on the equity of Balch in the lands aforesaid by the proceedings heretofore set out by the State for the use of Cocke County was a lien created within four months prior to the filing of the petition in bankruptcy and that the Trustee was entitled under section 67f of the Bankruptcy Act to have the benefit of said lien for the bankrupt's estate. The State denied this contention in an answer seasonably filed. The chancellor sustained the claim of the Trustee in Bankruptcy and the State has appealed. The case was tried on stipulation of facts below and the appeal therefore lay to this court.

Tennessee statutes providing for the lien asserted are as follows:

"Judgments and decrees obtained in any court of record in this State, in the county where the debtor resides at the time of rendition, shall be a lien upon the debtor's land from the time the same were rendered." Thompson's-Shannon's Code, section 4708.

"A judgment or decree shall not bind the equitable interest of the debtor in real estate or other property, un-

less, within sixty days from its rendition, a memorandum of the judgment or decree, stating the amount and date thereof, with the names of the parties, is registered in the register's office of the county where the real estate is situated." *Ibid*, section 4712.

Sections of the Federal Bankruptcy laws, upon which the petition of the Trustee in Bankruptcy is based, as they appear in U. S. C., title bankruptcy, section 107 are as follows:

"(c)   A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon *mesne* process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this title; or if the dissolution of such lien would militate against the best interests of the estate of such person the same shall not be dissolved, but the trustee of the estate of such person, for the benefit of the estate, shall be subrogated to the rights of the holder of such lien and empowered to perfect and enforce the same in his name as trustee with like force and effect as such holder might have done had not bankruptcy proceedings intervened.

"(f)   That all levies, judgments, attachments, or other liens obtained through legal proceedings against a per-

son who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect. Nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a *bona-fide* purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry. (July 1, 1898, ch. 541, section 67, 30 Stat., 564; Feb. 5, 1903, ch. 487, section 16, 32 Stat., 800; June 25, 1910, ch. 412, section 12, 36 Stat., 842.)''

We are of opinion that the Federal Statutes just quoted are not applicable to the case before us. We think that such provisions apply to liens fixed upon property which would otherwise have gone to the bankrupt's Trustee for distribution among the bankrupt's creditors or property which would have gone to the Trustee to be preserved as exempt property for the benefit of the bankrupt as in *Chicago, B. & Q. R. Co.* v. *Hall*, 229 U. S., 511, 57 L. Ed., 1306. The bankruptcy statutes are designed to secure equality among the bankrupt's creditors and for the benefit of the debtor in discharging him

from his liabilities and enabling him to start afresh with the property set apart to him as exempt. *Chicago, B. & Q. R. Co.* v. *Hall, supra.* To prevent the bankrupt's property being diverted from such purposes, liens obtained within four months prior to the filing of a petition in bankruptcy were declared null and void in case an adjudication of bankruptcy followed, if the debtor was insolvent when the lien was fixed.

It would be foreign to the intent of the bankruptcy statutes to construe them as affecting liens upon property, which property could in no event, irrespective of such liens, come into the hands of the bankrupt's Trustee, either for the benefit of the bankrupt or his creditors.

In the present case the bill averred, as heretofore stated, that Balch conveyed to defendant Henderson his Cocke County lands on September 30, 1924, for a cash consideration of $16,473.77 and the assumption by Henderson of the Fidelity Trust Company mortgage amounting to $5380.23. This averment was contained in section six of the bill herein. The stipulation of facts upon which this case was tried embodies the following:

"(6). That the allegations of Section Six (VI) of the complainant's original bill are true and correct; and that the transaction therein alleged to have been had between C. D. Balch and W. L. Henderson was a *bonafide* transaction in good faith and untainted with fraud; that the said Henderson actually paid for the property conveyed to him by the deed therein described the consideration recited by said deed, and said consideration was the full value of said property."

In view of this stipulation of counsel for the Trustee in Bankruptcy, it is conceded on his brief that the Trustee has no recourse against the land formerly owned by

the bankrupt and acquired by Henderson as aforesaid for a full and fair consideration. The lien herein asserted by the State and the relief sought by the State does not touch any property that could be saved for the bankrupt or his creditors. The State is seeking to reach land in which Henderson alone is interested. Balch having sold the property for an adequate consideration in a *bona-fide* transaction, it seems to us that his Trustee in Bankruptcy has no standing to intervene in a contro· versy between the State .and Henderson with reference to said property.

Henderson paid a full price for the land to Balch in a transaction that is not questioned and to uphold the contention of the Trustee in Bankruptcy would be to require Henderson to pay an additional sum, beyond his contract, for the benefit of Balch or his creditors.

This suit of the State to fix a statutory lien on Henderson's property is a suit, as it seems to us, with which Balch's Trustee in Bankruptcy has no concern and in which he had no right to intervene.

It is further insisted by the State that the intervening petition does not allege insolvency on the part of Balch at the time the State's lien was fixed and that the Trustee has offered no proof of insolvency at such time and it is urged that for these reasons the petition should be dismissed on authority of *Liberty National Bank* v. *Bear,* 265 U. S., 365, 68 L. Ed., 1057.

The Trustee insists on the contrary that the averments of the State's bill supply a failure on his part to charge and to prove the insolvency of Balch at the time the lien was obtained. We pass over this controversy, however, since for the reasons stated the decree of the chancellor seems to us erroneous.

The decree below must accordingly be reversed, the intervening petition dismissed, and the case remanded for further proceedings in conformity with this opinion.

NOTE. It does not appear from the stipulation that the deed from Balch to Henderson was a warranty deed, or that Henderson can have any recourse against Balch's trustee on account of said instrument.